IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FARMERS GROUP, INC., | § | |
| As Fiduciary of the FARMERS | § | |
| INSURANCE EXCHANGE CHOICE | § | |
| PLUS, CHOICE PLUS HSA, | § | |
| CHOICE MAX HSA and | § | CIVIL ACTION NO. 1:22-CV-233 |
| CHOICE PREMIER MEDICAL PLANS | § | |
| | § | |
| v. | § | |
| | § | |
| MIRIAM KEATON and | § | |
| SCHUELKE LAW FIRM, PLLC | § | |

_____

## PLAINTIFF'S ORIGINAL COMPLAINT

_____

COMES NOW Farmers Group, Inc., as Fiduciary of the Farmers Insurance Exchange Choice Plus, Choice Plus HSA, Choice Max HSA and Choice Premier Medical Plans, Plaintiff herein, and files this Plaintiff's Original Complaint, and in support thereof would show unto the Court as follows:

This is an action for equitable relief arising under the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), 29 U.S.C. §1001 et seq. Specifically, Plaintiff seeks equitable relief under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) .

# I.

## PARTIES

1.    Farmers Group, Inc. ("FGI") is a fiduciary of the Farmers Insurance Exchange Choice Plus, Choice Plus HAS, Choice Max HAS and Choice Premier Medical Plans.  These medical plans make up a part of the Farmers Group, Inc. Employee Indemnity Medical Plan, Dependent Daycare, and Healthcare Spending Account (Plan #532), which is a "cafeteria plan."  FGI is a foreign corporation with its principal place of business in Woodland Hills, California. FGI is therefore a citizen of the state of California.  The Farmers Insurance Exchange Choice Plus, Choice Plus HAS, Choice Max HAS and Choice Premier Medical Plans ("the Plan") is a self-funded group welfare plan established and maintained under ERISA.  All benefits are paid from a fund established through employer and participating employee contributions.  None of the benefits are paid through an insurance policy.

2.    Defendant Miriam Keaton is a resident and citizen of the State of Texas and may be served by personal service on her attorney of record, C. Brooks Schuelke, SCHUELKE LAW FIRM, PLLC, 3011 N. Lamar Blvd., Ste. 200, Austin, TX 78705, or wherever she may be found.

3.    Defendant Schuelke Law Firm, PLLC is a Texas professional limited liability corporation, and may served by service upon its officer C. Brooks

Schuelke, SCHUELKE LAW FIRM, PLLC, 3011 N. Lamar Blvd., Ste. 200, Austin, TX 78705, or wherever he may be found.

## II.

## <u>JURISDICTION</u>

4.     This Court has original and exclusive jurisdiction over Plaintiff's claim for appropriate equitable relief and to enforce the terms of an ERISA plan pursuant to §502(a)(3), 29 U.S.C. §1132(a)(3) and ERISA §502(e)(1), 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

## III.

## <u>FACTUAL BACKGROUND</u>

5.     The Farmers Insurance Exchange Choice Plus, Choice Plus HAS, Choice Max HAS and Choice Premier Medical Plans (sometimes referred herein as "the Plan") provides healthcare benefits to certain employees of various Farmers insurance companies, their spouses and dependents, including Defendant, as covered persons.

6.     Benefits provided under the Plan are summarized in a booklet known as a Summary Plan Description that is provided to all participants.  The Summary Plan Description ("SPD") contains a provision requiring a covered person who has a medical injury, illness or condition that is caused by a third party, including a UM/UIM carrier, and who recovers from such third party, or an insurance carrier, to immediately repay the Plan for the medical expenses paid by the Plan.

7.      The master plan document (in addition to the Summary Plan Description) provides that the Plan shall have a first priority right to reimbursement from any settlement received by a plan participant.  This right is for first priority lien against any settlement benefits, and provides for 100% reimbursement, without any reduction for attorneys fees or when the plan participant is not made whole by the settlement.

8.      Benefits provided under the Plan are fully funded directly by employer and participating employee contributions, not through any insurance carrier.  FGI is the Plan Administrator, and has delegated claims administration of the Plan to a third party administrator, United Healthcare; however, the third party administrator does not insure the plan. United Healthcare processes claims under the Plan pursuant to the terms of the plan, and pays claims with the Plan's funds, not insurance funds.

9.      On July 13, 2016, Defendant Keaton was involved in an accident involving a third party and caused by the negligence of the third party ("the Accident").  As a result of the Accident, Defendant Keaton sustained personal injuries. Defendant Keaton received benefits from the Plan for certain medical treatment for these injuries, amounting to $53,395.88 as of the filing of this Complaint.

10.     Defendant Keaton retained Defendant Scheulke Law Firm, PLLC, to represent her for her personal injuries from the Accident.  Defendants settled

Defendant Keaton's claims for personal injury and received an unknown amount in settlement.

11.    Upon information and belief, the settlement funds are in the possession of Defendant Scheulke Law Firm, PLLC.  Defendant Scheulke Law Firm, PLLC, is therefore named as the stakeholder of the settlement funds.  See *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 353-354 (5th Circuit 2003); cert. denied, *Ferrer, Poirot & Wansbrough v. Bombardier Aerospace Employee Welfare Benefits Plan*, 541 U.S. 1072, 124 S.Ct. 2412, 158 L.Ed.2d 981 (2004).  See also,   *ACS Recovery Servs. v. Griffin*, 723 F.3d 518 (5th Cir. 2013), cert. denied. Although required by the Plan, Defendant Keaton has refused to pay the Plan for the Plan's medical payments made as a result of the Accident.

12.    Upon information and belief, Defendant Keaton is in possession of settlement funds belonging to the Plan.  Alternatively, the funds that rightfully belong in good conscience to the Plan are in the trust fund of the Defendant Scheulke Law Firm, PLLC, and thus subject to Defendant Keaton's control.

13.    The Plan provided due notice to Defendant Keaton prior to filing this suit of its right of reimbursement and the amount of its lien.  However, Defendant Keaton has refused and continues to refuse to reimburse the Plan.  Defendant Keaton has taken deliberate action to the Plan's detriment by bringing suit in state court for the determination of the Plan's rights.  A plan beneficiary's motion

to adjudicate rights under an ERISA plan, whether based on state law or otherwise, is a claim arising under §502(a) of ERISA. *Clancy v. Employer's Health Ins. Co.*, 82 F.Supp. 2d 589 (E.D. La. 1999), aff'd 248 F.3d 1142 (5th Circuit 2001) (unpublished opinion), cert. den'd 534 U.S. 820 (2001). Such jurisdiction lies with United States district courts, not a state court. Plaintiff was therefore required to retain counsel to respond to the improper state court suit, and to file suit herein to enforce the terms of the Plan.

14.    The ERISA statute at 29 U.S.C. § 1104(1) creates a "prudent man" standard for a fiduciary to discharge its duties solely in the interests of the participants and beneficiaries, for providing benefits, defraying costs...and in accordance with the terms of the plan documents. Plaintiff therefore has a fiduciary duty to protect Plan assets, which includes reimbursement payments from settlements. Plaintiff has a fiduciary duty to every person covered under the Plan to act in the best interests of the overall Plan, and not to elevate the needs of an individual over the Plan itself. This includes the fiduciary duty to make sure that there are sufficient Plan assets not only to pay existing claims, but claims in the future. *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996) (a fiduciary is obligated to "preserve assets to satisfy future, as well as present, claims" and "take impartial account of the interests of all beneficiaries"). Thus, Plaintiff is obligated to enforce the terms of the Plan which require reimbursement from the settlement.

## IV.

## CLAIMS
## COUNT 1—ENFORCEMENT OF ERISA PLAN TERMS

15.    Paragraphs 1 through 14 are hereby incorporated as if fully set forth herein.

16.    Pursuant to §1132(a)(3), the Plaintiff seeks equitable relief against the Defendants to enforce the terms of the ERISA Plan.

17.    Upon information and belief, Defendant Keaton is in actual possession of settlement proceeds, and therefore in possession of funds that as a matter of equity and good conscience belong to the Plan.  The Plan requires that Defendant Keaton act as trustee over the settlement funds.   Alternatively, Defendant Scheulke Law Firm, PLLC and/or its trust fund is in possession of settlement funds that as a matter of equity and good conscience belong to the Plan, and the funds are subject to Defendant Keaton's control.

## COUNT 2--RIGHT OF REIMBURSEMENT

18.    Paragraphs 1 through 17 are hereby incorporated as if fully set forth herein.

19.    The Plan documents provide the following:

## SECTION 11 - SUBROGATION AND REIMBURSEMENT

The Plan has a right to subrogation and reimbursement....

The right to reimbursement means that if a third party causes or is alleged to have caused a Sickness or Injury for which you receive a settlement, judgment, or other recovery from any third party, you must use those proceeds to fully return to the

Plan 100% of any Benefits you received for that Sickness or Injury....

The following persons and entities are considered third parties:...

■ any person or entity who is or may be obligated to provide benefits or payments to you, including benefits or payments for underinsured or uninsured motorist protection, no fault or Traditional auto insurance, medical payment coverage (auto, homeowners or otherwise),workers' compensation coverage, other insurance carriers or third party administrators;...

You agree as follows:

■ You will cooperate with the Plan in protecting its legal and equitable rights to subrogation and reimbursement in a timely manner, including, but not limited to:...

 --obtaining the Plan's consent or its agents' consent before releasing any party from liability or payment of medical expenses; ...

Your failure to cooperate with the Plan is considered a breach of contract. As such, the Plan has the right to terminate your Benefits, deny future Benefits, take legal action against you, and/or set off from any future Benefits the value of Benefits the Plan has paid relating to any Sickness or Injury alleged to have been caused or caused by any third party to the extent not recovered by the Plan due to you or your representative not cooperating with the Plan. If the Plan incurs attorneys' fees and costs in order to collect third party settlement funds held by you or your representative, the Plan has the right to recover those fees and costs from you. You will also be required to pay interest on any amounts you hold which should have been returned to the Plan.

■ The Plan has a first priority right to receive payment on any claim against a third party before you receive payment from that third party...

■ The Plan's subrogation and reimbursement rights apply to full and partial settlements, judgments, or other recoveries paid or payable to you or your representative, no matter how those proceeds are captioned or characterized. Payments include, but are not limited to, economic, non-economic, and punitive damages. The Plan is not required to help you to pursue your claim for damages or personal injuries and no amount of associated costs, including attorneys' fees, shall be deducted from the Plan's recovery without the Plan's express written consent. No so-called "Fund Doctrine" or "Common Fund Doctrine" or "Attorney's Fund Doctrine" shall defeat this right.

■ Regardless of whether you have been fully compensated or made whole, the Plan may collect from you the proceeds of any full or partial recovery that you or your legal representative obtain, whether in the form of a settlement (either before or after any determination of liability) or judgment, no matter how those proceeds are captioned or characterized. Proceeds from which the Plan may collect include, but are not limited to, economic, non-economic, and punitive damages. No "collateral source" rule, any "Made-Whole Doctrine" or "Make-Whole Doctrine," claim of unjust enrichment, nor any other equitable limitation shall limit the Plan's subrogation and reimbursement rights. [1]

<u>Subrogation and Reimbursement</u>…. In addition, if the Plan has already paid Benefits Subject to Reimbursement to a Participant or other individual for an injury or illness where any other party has a legal obligation to compensate such person for his injury or illness, the Plan has an automatic right of reimbursement for such payments from any award, settlement, judgment or other payment that may be received in compensation for the injury or illness and a first lien against any recovery to the extent of any benefits paid or to be paid and expenses incurred by the Plan in enforcing this provision. Any recovery shall be held in constructive trust for the benefit of the Plan, to the extent of the Plan's prior payments….

---

[1] Summary Plan Description, 1/1/2016, p. 91 and 92. (Underlined and bold font in original.)

The Plan's first lien supersedes any right that the covered person may have to be "made whole." In other words, the Plan is entitled to the right of first reimbursement out of any recovery the covered person procures or may be entitled to procure regardless of whether the covered person has received compensation for any of his damages or expenses, including any of his attorneys' fees or costs. Additionally, the Plan's right of first reimbursement will not be reduced for any reason, including attorneys' fees, costs, comparative negligence, limits of collectability or responsibility, or otherwise. As a condition to receiving benefits under the Plan, the covered person agrees that acceptance of benefits is constructive notice of this provision.[2]

20.    The Plan specifically provides a right of reimbursement against any settlement, and that right is first in priority.  It also imposes a constructive trust over any settlement funds, and disclaims the made whole and common fund doctrines.  Where the terms of a self-funded ERISA plan are clear, the plan will be enforced as written; if the plan requires reimbursement and clearly disclaims equitable arguments such as common fund and made whole, it is entitled to complete reimbursement.  *Sereboff v. Mid Atlantic Medical Services. Inc.*, 547 U.S. 356, 126 S. Ct. 1869, 164  L.Ed.2d 612 (2006); *US Airways v. McCutchen*, 569 U.S. 88, 133 S.Ct. 1537, 185 L.Ed.2d 654 (2013).

---

[2] Farmers Group, Inc. Employee Indemnity Medical Plan, Dependent Daycare, and Healthcare Spending Account (Plan #532), 1/1/2015, p. 32-33.  (Underlined font in original.) This document incorporates all other Plan documents into one "Cafeteria Plan," but does not modify, amend, or otherwise affect the terms and conditions of the combined plans. (p. 1)

## V.

## <u>DAMAGES</u>

21.    As the result of the violation of the ERISA Plan terms by Defendant Keaton, the Plan has been harmed and Plaintiff seeks appropriate equitable relief, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), in the form of (1) the imposition of a constructive trust and equitable lien in favor of the Plan upon the settlement funds in actual or constructive possession of Defendants up to$53,395.88; (2) a declaration of the Plan's ownership of the settlement proceeds up to the amount of payments made by the Plan for medical expenses (or the amount of the settlement), and (3) an order directing Defendants to pay or turn over such proceeds to the Plan to the extent of the Plan's interest therein, and directing Defendants to execute any documents or instruments necessary to transfer legal title of the funds to the Plan.

22.    In addition, Plaintiff seeks its attorney fees in this matter, and in the improperly filed state court action, pursuant to the Plan terms and as authorized by 29 U.S.C. 1132(g), 502(g)(1).

## VI.
## <u>PRAYER</u>

23.    For these reasons, Plaintiff respectfully asks that the Court:

   a)    impose a constructive trust and equitable lien in favor of Plaintiff against the settlement proceeds up to the amount of its lien;

b)      declare Plaintiff the owner of the settlement proceeds up to the
        amount of its lien;

c)      order Defendants to turn over the settlement up to the amount of
        Plaintiff's lien;

d)      enter judgment for Plaintiff;

e)      award costs of Court;

f)      award attorney fees; and

g)      grant any other further equitable relief which the Court deems
        appropriate.

                        Respectfully submitted,

                        /s/  Laura D. Schmidt
                        Laura D. Schmidt
                        SBN: 22142300
                        **KELLY, SMITH & SCHMIDT, P.C.**
                        5700 Tennyson Pkwy. Ste. 300
                        Plano, TX 75074**
                        (972) 636-7900
                        (713) 861-7100
                        schmidt@kellysmithpc.com
                        *\*\*all mailed correspondence should*
                        *be directed to the Houston office,*
                        *KELLY, SMITH & SCHMIDT, P.C.*
                        *12621 Featherwood Dr., Ste. 150*
                        *Houston, Texas 77034*
                        **ATTORNEYS FOR PLAINTIFF**